Glenn WALLACE, Petitioner–Appellant,

v.

John NASH, Warden, Respondent–Appellee.

Docket No. 01–2402.

United States Court of Appeals, Second Circuit.

Submitted: June 3, 2002.

Decided: Nov. 14, 2002.

---

Glenn Wallace, Ray Brook, NY, Petitioner–Appellant pro se.

Joseph A. Pavone, United States Attorney, Northern District of New York, Syracuse, NY (Charles E. Roberts, Elizabeth S. Riker, Assistant United States Attorneys, Syracuse, NY, of counsel), for Respondent–Appellee.

Before: KEARSE and McLAUGHLIN, Circuit Judges, and HAIGHT, District Judge *.

KEARSE, Circuit Judge.

Petitioner Glenn Wallace, a federal prisoner, appeals from a final judgment of the United States District Court for the Northern District of New York, David N. Hurd, *Judge*, dismissing his petition under 28 U.S.C. § 2241 for a writ of habeas corpus on the ground that, in a prison disciplinary proceeding, he was improperly convicted of "[p]ossession ... of a ...

---

* Honorable Charles S. Haight, Jr., of the United States District Court for the Southern District of New York, sitting by designation.

weapon" in violation of § 104 of the United States Bureau of Prisons ("BOP") Prohibited Acts Code ("PAC" or "Code"), 28 C.F.R. § 541.13 Table 3, based on his striking another inmate with a pool cue. The district court granted the government's motion to dismiss the petition for failure to state a claim on which relief can be granted, ruling that a "weapon" includes anything used to injure or threaten a person. On appeal, Wallace contends principally that a conviction for "possession" of a weapon may not properly be predicated on the injurious or threatening use of an object that is not considered a weapon until it is so used. For the reasons that follow, we agree, and we vacate the dismissal of the petition and remand for further proceedings.

## I. BACKGROUND

The pertinent events, according to the record of the disciplinary proceedings and the allegations of Wallace's petition, were as follows. On August 1, 1999, Wallace, an inmate at a federal correctional institution, commenced a game of pool, using a pool cue given to him by a prison guard. When another inmate, Bernardo Bravo, persisted in interfering with Wallace's game, Wallace struck Bravo on the cheek with the pool cue.

As a result of that incident, prison disciplinary proceedings were commenced against Wallace on the charge that he violated PAC § 101, which prohibits "[a]ssaulting any person ... when serious physical injury has been attempted or carried out by an inmate," 28 C.F.R. § 541.13 Table 3. At the disciplinary hearing, the hearing officer added a charge (as to which Wallace waived his right to 24 hours' notice) that Wallace had violated PAC § 104, which prohibits "[p]ossession ... of a ... weapon." 28 C.F.R. § 541.13 Table 3. Both PAC § 101 and PAC § 104 define offenses that are among those categorized as of the "Greatest" seriousness in the Prohibited Acts Code and hence warrant the most severe penalties. See 28 C.F.R. § 541.13(a) & id. Table 3.

Following the hearing, the hearing officer declined to find Wallace guilty of violating PAC § 101, the assault provision that focuses on "serious" physical injury, and instead found him guilty of violating PAC § 224, which prohibits "[a]ssaulting any person ... when a less serious physical injury or contact has been attempted or carried out," 28 C.F.R. § 541.13 Table 3. A PAC § 224 offense is in the "High," not the "Greatest," category of gravity, and carries a less severe penalty than a § 101 offense. In addition, the hearing officer found Wallace guilty of possession of a weapon in violation of PAC § 104. As punishment for the latter offense, the hearing officer ordered, inter alia, that Wallace be disallowed 40 days of good-conduct credit.

Wallace appealed to the BOP Regional Director, contending, to the extent pertinent here, that the PAC § 104 possession charge was improper because a pool cue, although it can be used as a weapon, is not, in and of itself, a weapon. The Regional Director rejected this contention, stating that "[a]lthough a pool stick is not a weapon per se, it may be considered as one if wielded to inflict an injury to another." Wallace appealed that decision to the Office of the General Counsel, which rejected his challenge to the possession charge, stating that "[w]hile a pool cue is not normally considered to be a weapon, in this case you clearly used it as such (striking the victim in the head), making the charge highly appropriate."

Having exhausted his administrative remedies, Wallace filed the present habeas petition, pursuing, inter alia, his contention that a pool cue should not be consid-

ered a weapon within the meaning of PAC § 104. He requested the expungement of his PAC § 104 conviction and the restoration of his good-time credits. The government moved to dismiss for failure to state a claim on which relief can be granted, arguing that a pool cue may be considered a weapon within the meaning of § 104 if used as a weapon. The district court, adopting the report and recommendation of the magistrate judge to whom the matter was referred, granted the motion to dismiss. As to Wallace's challenge to the possession conviction, the court stated:

> Black's Law Dictionary defines a weapon as "[a]n instrument of offensive or defensive combat, or anything used, or designed to be used, in destroying, defeating, threatening, or injuring a person." *Black's Law Dictionary* (6th Ed.1990).

> It is apparent that at the time Wallace was observed attacking Bravo, he was using the pool cue as "an instrument of offensive combat." Since the pool cue was not being used for any other purpose at this time, he was properly found guilty of possession of a weapon.

Order and Report–Recommendation of Magistrate Judge Gary L. Sharpe dated March 13, 2001, at 7, adopted by the Decision and Order of Judge Hurd dated April 13, 2001.

This appeal followed. Although Wallace's habeas petition also asserted a claim that he had been denied procedural due process in the scheduling of his disciplinary hearing, that claim has not been pursued on this appeal.

## II. DISCUSSION

On appeal, Wallace principally pursues his contention that a charge under PAC § 104 is appropriate only "if the very possession of th[e] object would constitute a violation of that regulation." (Wallace brief on appeal at 5.) The government, analogizing to New York law, argues chiefly that any object may properly be deemed a weapon within the meaning of PAC § 104 by reason of the circumstances in which it is used. We find merit in Wallace's contention.

■ For a prison inmate, the loss of good-time credits "is unquestionably a matter of considerable importance," for "[i]t can ... extend the maximum term to be served...." *Wolff v. McDonnell*, 418 U.S. 539, 561, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). An inmate therefore has a fundamental right not to be deprived of good-time credits as punishment for conduct that had not been prohibited. *See, e.g., Coffman v. Trickey*, 884 F.2d 1057, 1060 (8th Cir.1989) ("district court should have granted [inmate] a directed verdict on his claim [under 42 U.S.C. § 1983] that he was deprived of liberty without due process of law when [prison superintendent] punished him for conduct that was not proscribed"). In fashioning regulations for the conduct of inmates in federal penal institutions, the Attorney General of the United States has promulgated PAC, a code of conduct that is set forth in the Code of Federal Regulations, *see* 28 C.F.R. § 541.

PAC § 541.13(a) creates "four categories of prohibited acts-Greatest, High, Moderate, and Low Moderate"; it identifies and classifies particular conduct, *see, e.g., id.* § 541.13 Table 3, and specifies the authorized sanctions for each category of conduct, *see id.* § 541.13 Tables 3, 5, 6. An inmate found to have committed a prohibited act may be punished by, *inter alia,* the loss of some or all of his accrued good-time credits, including both statutory credits and good-conduct credits, *see* 28 C.F.R. § 541.13 Table 6, n. 1. For a "Greatest Offense Category" offense (PAC §§ 100–

199), the inmate may be punished by the forfeiture of up to 100% of his good-time credits. *See* 28 C.F.R. § 541.13 Table 6. Forfeiture of good-time credits for a "High Offense Category" offense (PAC §§ 200–299) may not exceed 50% of such credits; forfeiture for a "Moderate Offense Category" offense (PAC §§ 300–399) may not exceed 25% of such credits; and forfeiture for a "Low Moderate Offense Category" offense (PAC §§ 400–499) may not exceed 12.5% of such credits (or 25% for repeat offenders). *See id.* & Table 3.

■ PAC § 104, at issue here, prohibits the "[p]ossession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition." 28 C.F.R. § 541.13 Table 3. On its face, this section does not appear to encompass the possession of a pool cue. As recognized at both stages of the administrative review of the hearing officer's decision in Wallace's case, a pool cue is not inherently a weapon. In contrast, all but two of the objects specified in PAC § 104 are intrinsically weapons: guns, knives, explosives, and ammunition. And in listing the two items that would not be considered weapons *per se*, that section attaches qualifiers that make clear that the prohibition is limited to items that have inherent potential for use as implements of aggression. Thus, § 104 prohibits the possession not simply of "instrument[s]," but of "*sharpened* instrument[s] (emphasis added)," and not simply of "chemical[s]," but of "*dangerous* chemical[s]" (emphasis added). Thus, with those qualifying adjectives, every object or substance specified in § 104 is inherently dangerous. The term "weapon" is nowhere defined in the Code, but the inclusion of that word in a list in which every specified item is inherently dangerous leads us to infer that the drafters intended the word "weapon" similarly to mean objects that may be considered weapons without regard to their use. Items such as swords, blackjacks, and brass knuckles come to mind; pool cues are not of this class.

■ Nor are we persuaded that the term "possession" in PAC § 104 was intended to encompass "use." The two words are not synonymous, and where the prohibition is against a manner of using an object that may lawfully be possessed, the Code expressly prohibits such use. For example, PAC § 319 prohibits "*[u]sing* any equipment or machinery contrary to instructions or posted safety standards," 28 C.F.R. § 541.13 Table 3 (emphasis added); *see also id.* PAC § 318 (which prohibits "*[u]sing* any equipment or machinery which is not specifically authorized" (emphasis added)). As for items that an inmate is allowed neither to use nor to possess, various sections of the Code expressly distinguish between the concepts of possession and use. For example, with respect to "any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff," 28 C.F.R. § 541.13 Table 3, PAC §§ 112, 113, the latter section prohibits their "[p]ossession," while the former prohibits their "[u]se." The drafters' recognition that possession does not encompass use is also displayed within a number of individual PAC sections. *See, e.g., id.* PAC § 222 (which prohibits "[m]aking, *possessing, or using* intoxicants" (emphasis added)); *id.* PAC § 397 (which prohibits, *inter alia*, "*possession and/or use* of another inmate's [telephone] PIN number" (emphasis added)); *id.* PAC § 331 (which prohibits "*[p]ossession* . . . of a non-hazardous tool," explained in part as a "[t]ool *not likely to be used* in an escape or escape attempt, or *to serve as a weapon* capable of doing serious bodily harm to others" (emphases added)).

In sum, the Prohibited Acts Code distinguishes between prohibitions against possession and prohibitions against use. Section 104 mentions only possession, and if a pool cue were a "weapon" within the meaning of PAC § 104 as drafted, its possession by Wallace would have been punishable the moment the cue was given to him by the guard. The punishment imposed on Wallace, however, was not for possession, but rather for his use of the pool cue to strike another. That punishment was not properly imposed under § 104, which does not mention use. Had the drafters intended § 104 to extend to every object when it is used as a weapon, they could easily have added the phrase "or any instrument used as a weapon." The fact that § 104 contains no such phrase, whereas many other sections, dealing with other items, expressly prohibit use, persuades us that the § 104 prohibition against "[p]ossession" of a "weapon" was not intended to constitute a prohibition against the injurious "use" of a pool cue.

The government's reliance on two New York State cases for the proposition that a weapon possession charge may properly be based on the manner in which an otherwise innocuous instrument has been used, see *People v. Molnar*, 234 A.D.2d 988, 652 N.Y.S.2d 186, (4th Dep't 1996); *People v. Jones*, 196 A.D.2d 889, 602 N.Y.S.2d 159, (2d Dep't 1993), is misplaced. Although those cases stand for the proposition that a conviction for "criminal possession of a weapon" in the third or fourth degree under New York law, N.Y. Penal L. § 265.02 (third degree); *id.* § 265.01 (fourth degree), may be based on the "temporary use" of an "object" that has no "inherent vice" and is "not . . . inherently dangerous," *People v. Jones*, 196 A.D.2d at 890, 602 N.Y.S.2d at 160 (fourth degree); *see also People v. Molnar*, 234 A.D.2d at 988, 652 N.Y.S.2d at 186 (third degree, based

on possession in fourth degree plus prior criminal record), those cases dealt with § 265.01's prohibition against possession of a "dangerous . . . instrument," N.Y. Penal L. § 265.01(2). The term "dangerous instrument" was expressly defined to include "any instrument, article or substance . . . which, *under the circumstances in which it is used* . . ., is readily capable of causing death or other serious physical injury." N.Y. Penal L. § 10.00[13] (emphasis added). There is no similar definition in the Prohibited Acts Code.

The government also argues that, as a matter of policy, there was "no unfairness" in punishing Wallace under PAC § 104 "since an assault with a pool stick or other weapon is more serious than assault without a weapon" (Government brief on appeal at 9), presumably because there is a greater potential for serious injury. The comparative-injury hypothesis is of course sound, but the effort to apply it in this case is misdirected. Wallace was initially charged with violating PAC § 101, which deals with an assault "when serious physical injury has been attempted or carried out," 28 C.F.R. § 541.13 Table 3. If the hearing officer had found a violation of § 101, which like § 104 is a "Greatest" category offense, Wallace would have been exposed to punishment of the greatest severity. But in finding that Wallace's assault on Bravo violated PAC § 224, warranting a lesser penalty, and did not violate § 101, the hearing officer not only refused find to that Wallace inflicted serious injury but also refused find to that he even "attempted" to inflict serious injury. Thus, the policy considerations do not persuade us to take an expansive view of PAC § 104, especially given its plain meaning and its apparently intended scope.

Finally, the fact that the possession prohibition in § 104 does not prohibit the use

of an otherwise innocuous object to injure another does not mean that Wallace's conduct has escaped punishment. Wallace was found to have violated the assault prohibition set out in PAC § 224, and his punishment for that violation is not challenged on this appeal. If the government perceives that there is an inappropriate gap in the Prohibited Acts Code, it is of course free to add a provision for future use, prohibiting "the use or attempted use of any instrument to inflict injury on another inmate."

For the foregoing reasons, we conclude that Wallace's complaint alleging that he was punished under PAC § 104 for possession of a weapon, based on his use of a pool cue, stated a claim on which relief can be granted.

## CONCLUSION

We have considered all of the government's contentions in support of the judgment of the district court and have found them to be without merit. The judgment is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.